The Honorable Judges of the United States Court of Appeals, in and for the Summit Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and its Honorable Court. Good morning everyone. Our first case of the day is Magnuson v. Trulite Glass & Aluminum Solutions. Mr. Powers, or Mr. Power, I'm sorry. Thank you. Thank you. I appreciate the opportunity to argue this case. My name is Joseph Power. I'm here on behalf of the Plaintiff Appellant, David Magnuson. Your Honors, this was a case that had started off as a contested liability during the trial. The defendant admitted liability, so the issue boiled down to damages only. The first issue we raised was the alleged missing photographs. Now, discovery closed in this case on July 15, 2021, fact discovery. Thereafter, the defense got numerous extensions for a neuropsychologist, which they ended up withdrawing. But in his report, long before the trial, over a year before the trial, we took a deposition of the neuropsychologist. This case was tried in July of 2023, and these were the photographs attached to his report, including a photo of Mr. Magnuson with his son in Las Vegas. It showed a photograph of him with some friends. It showed him at a concert. He put them on his Facebook. Obviously, Dr. Hartman got these photographs, so it was publicly available. And as I understand Facebook, I'm not a Facebook person. Honestly, I've never posted to Facebook, but I understand you can post things publicly, and then you can post things for your friends, which is what the confusion came in here, is that he posted some things, which he testified to publicly. And then the last thing, which took place in February of 2023, long beyond fact discovery, he apparently went on a cruise. He went on a cruise, which I wasn't aware of, but he went on a cruise. And he had some photographs, which were apparently taken, according to his sister. And all of a sudden— Did he explain all this to the jury? He tried to, but it was very confusing. So why is it an issue for us, then? I'm just asking, if he got to—it just seems like this is a jury issue. He's subject to cross-examination on where were these photos, and he explains to the jury, well, here's where they were. I didn't try to conceal this. But I don't see how this doesn't go to his credibility. He says he was injured in an automobile accident. He asked for, I think, $20 million. Is that what he got, $20 million? And his credibility as to the extent of his injuries and preexisting conditions and when he was injured are extraordinarily important. And if he seemed to be hiding photos of him on vacation in Las Vegas, that's something the jury should know. And he can explain to the jury he didn't hide anything. Well, he didn't hide anything, but then in closing argument, the defense lawyer argued that he was concealing these photographs. He didn't conceal anything. One is supposed to go through the process, discovery process, to have what's called meet and confer, as the court is aware, if there's a discovery dispute, if they're accusing us or plaintiff of hiding something. They had these photographs of Las Vegas long before the occurrence, as I said, over a year. But I wonder, why is that the penalty? Why does it have to be a discovery dispute that's decided by the judge? Why can't it be a credibility determination that's made by the jury? If the defendant raises this issue and says to the plaintiff, Mr. Plaintiff, you concealed documents from us, and the plaintiff says, No, I didn't, and has a credible answer to the jury, that hurts the defendant. Well, Your Honor, if we're going to do that, we had a motion for sanctions, which was the appropriate way to do it before trial, because they concealed the ECM data, which would have showed the speed of the vehicle. They concealed it from us. Admittedly, we wrote eight letters to them, called for a meet and confer. They never called back. And then we asked for sanctions that it be barred, the fact of the speed of the vehicle. They absolutely concealed it, because they kept the ECM data for another truck, and they gave us that, claiming this was our ECM data, which would have showed the speed at the time of crash. Admittedly, they concealed it. They had the ECM data for another truck on the same day, claiming it was our ECM data. When we figured it out, consulted an expert, it wasn't our ECM data. We asked for it repeatedly, eight letters, called her. She didn't return a phone call. So we asked for sanctions that speed be barred. And even in the brief here before the court, they're saying it was a low-speed collision. We don't believe it was, but we didn't have the ECM data. So we asked, as the court requires, to go through Rule 37, meet and confer. We tried to do it, wrote eight letters. They concealed the ECM data, so why didn't we have the same opportunity? Well, what would the sanctions have had to do with the presentation of evidence at trial? If the judge would have granted the sanctions motion and given sanctions, what difference would that have made regarding the presentation of evidence at trial? Because counsel would not have been able to say in opening statement, it was a low-speed occurrence. It was almost stopped when they collided. But didn't the judge say that that's not evidence? And I don't think, is there anywhere in the record that the defendant ever questioned any witness regarding the speed of the truck? No, it was her mere statement, and then she never proved it up, which is bad faith. But that's actually good in closing argument, isn't it? I mean, you get to get up and say, look. Prancer on the court would say, look what she did in opening statement, and there's no evidence there whatsoever. Not if they deliberately intentionally concealed the ECM data for the subject truck, argued it was low speed, even their brief before the court, they argued this was a low-speed collision. There's no evidence of that. They destroyed the ECM data. They had it, and at some point, they got rid of it, and then the plaintiff does not even get, the defendant does not even get into the issue of ECM data or speed, and that's what she argues. That's what they tell this court in their brief. Did the jury have the photos of the accident, of the damage? Did the jury have the photos of the damage to the vehicles after the accident? They did. They did. And they had the evidence that the plaintiff did not go to the hospital and refused medical treatment after the accident? No, he did get treatment by the ambulance personnel. And then he left? And then he left. He went to a meeting. He had his dog with him as well, and then within two days, he went to urgent care. And they had all that evidence, right? They did have that evidence. So let's say the judge should have allowed or should have disallowed the evidence regarding the speed of the crash. How does that affect the plaintiff's substantial rights? Let's say the judge made an evidentiary error and should have granted sanctions and not allowed any statement or evidence regarding the speed of the vehicles at the time of the accident. How does that affect the plaintiff's substantial rights? Because it affects the credibility of the plaintiff, just like in the Goldberg v. Northwestern Memorial Hospital case. As the court is aware, about 96% of cases, personal injury cases, are filed in state court, so often we have to rely on state opinions regarding issues like this. And the Goldberg case was like a six-plus week trial, and they reversed just on bringing a discovery dispute before the jury, destroying the credibility of the witness, which was not in this case. Counsel, during trial and before us, you're trying to draw this, if I'm understanding it correctly, a pretty bright line. Once discovery is over, it's over. You can't question a witness on it. You can't address anything. You need to address it through the discovery process. And Rule 37 can be used. You can ask for all sorts of sanctions. You can ask for an adverse inference. But the judge isn't bound by or limited to that. And if discovery issues come up in the middle of trial, they can be fodder for cross-examination. What rule or what case do you have in federal court saying that a discovery issue can't bleed over into the trial? Well, a discovery issue can bleed over into trial before the judge. You can take it up before the judge, but you shouldn't take it up before the jury. You should take it up for the judge, and the judge would make that decision. So if we're in court here today, in trial court, and someone's Facebook is out, you know, they were dancing last night, and they're saying they can't walk, you come in and the jury can't see that because it's a discovery issue? Well, no, that would go for impeachment. But you bring it up to the court. We'd identify it as a exhibit so everyone would be aware of it. You'd be wise to bring it up to the judge first, and the judge says jury can see it, the jury can see it, right? Well, yeah, that would be a court decision, and that wasn't done in this case. This was just thrown at us in terms of like a cruise in 2021, which we tried to update and get in pre- and post-accident photographs, and the defense objected, and the judge warned us, do not get into any discovery issues for photos that haven't been previously produced. You objected, and the judge limited the cross-examination on the photos, correct? Yeah, but in closing argument, she accused the plaintiff of concealing evidence, which he didn't. He didn't conceal evidence, and how cases are handled, we pick, we would pick the pre- and post-collision photographs we were going to offer in evidence, and then the defense typically objects. We don't, the plaintiff's not obligated to produce every photograph in his life pre- and post-occurrence. That would be screened by the court. You know, in this particular case, that didn't happen. This was sprung on the plaintiff in closing argument. She accused him of concealment, okay? And she also, another issue is with, in the Gruca case, they said, and we agree, the abuse of discretion, and they cite Gruca. Gruca is a case where they said that the plaintiff should have sued the FDA, and the judge overruled the objection, and on that alone, the Seventh Circuit reversed the Gruca case. In our case, it's much worse. Dr. Fleeman, who's a doctor she put on the stand, Dr. Fleeman supported the plaintiff's case, which she was upset. She asked to cross-examine her as a hostile witness, and then in trial, she accused him of medical malpractice, which had to be a cause of the occurrence. That obviously is reversible error. Gruca decided that. In this case, it's worse than Gruca. But didn't, in that case, didn't the defense counsel acknowledge that to the extent that the harms were caused by the doctor, that defendant would also be liable for any sort of injury or damage arising out of that conduct? She did say that, and then she went on to say that he had to be the cause. It was either that, or it was his work. Before Myomalacia was diagnosed, it was the work that he did. But she just told the jury that if you find that it is his fault, like I'm saying, we're still liable for the damages to that. Yeah, but then at the next moment, she says that it had to be either Dr. Fleeman who caused the Myomalacia or his activities afterwards, which prior occurrences are only admitted if you have support, expert support of a prior occurrence that it's causally related. There's no case cited to this course that approves what was done in this case by allowing in a prior occurrence where there's no causal connection, there's no tie-up. We objected to that. The court overruled our objection, denied our motion in Lemonade, and allowed testimony saying that that prior occurrence, just a note, by the physical therapist saying there was some numbness, which turns out to be in the lower back, not the upper back, and there's no testimony that the pseudo-radiculopathy, which means there isn't radiculopathy, there's no nerve involvement, there's no spinal cord injury in 1997, 20 years before this occurrence. There's no testimony tying it up. That's reversible error. Then her discussion about the subsequent activities of the plaintiff is also reversible error. We cite to the court the Caliban case and the Obszanski case regarding the subsequent activities she argued with no foundation, no expert testimony tying in either the prior occurrence 20 years before nor the subsequent activities. That's reversible error in Caliban and Obszanski. This court said when you're talking about cumulative trauma, which is what she argued in her closing argument, cumulative trauma, you have to have specific expert testimony. He wouldn't even accept it was a summary judgment motion. The court would not accept treating doctors and an ergonomic expert said you have to have a specific testimony. If you're going to talk about cumulative trauma causing an injury, you need to have specific expert testimony tying that up. And that was not done in this case, of course, but it was argued. That, again, is reversible error. The issue of letting in prior accident 20 years before and then arguing the subsequent activities before the myomalacia was diagnosed, that is reversible error and there's nothing that's in any brief that suggests otherwise. Your Honor, I think I'm over my time. If there's any other questions by the court, but the Gruca case clearly says that some circuit that for her to argue that Dr. Fleeman should have been sued by the plaintiff, that that is reversible error. This is worse than the Gruca case, in our case, in the case of Barr. If there's any questions before I sit down, I'm happy to address them. I'm going to reserve the rest of the time for rebuttal. Okay. Thank you. All right. Thank you. Ms. Green, what would you like to add? Good morning. May it please the court. My name is Ellen Green, and I'm here on behalf of the Apple League True Light Glass and Aluminum. Because the plaintiff was disappointed with the damages he was awarded, which was over $120,000, he's focused on a handful of evidentiary issues and some arguments of defense counsel during trial to assert that he was deprived of a fair trial. All of these issues, including the district court's denial of the motion for a new trial are subject to an abuse of discretion standard. The district court observed the trial proceedings that went for seven days and was in the best position to address these issues. And it properly concluded that there was nothing fundamentally unfair about the procedure of this trial. There's lots of issues that plaintiff raised in the appellant's brief, and I will just address the ones that he has raised here on oral argument. The first of these is these Facebook photos. The ones that are at issue, they came up for the first time at trial when the plaintiff's sister testified regarding the plaintiff's travels after the accident. And she said, oh, and he went on a cruise recently. I know this because I saw it on his Facebook post. And that was the first time that True Light became aware of these particular photos. So when plaintiff took the stand, he testified that he experienced pain every single waking minute of the day and that travel was hard for him. So defense counsel properly cross-examined him about his travel since the accident and if he was aware that these post-accident photos had been requested by defense in discovery. This resulted in a sidebar in which the district court agreed that these were relevant to plaintiff's claim for loss of normal life and his credibility. It therefore allowed just a limited examination. There were three questions allowed, whether he knew the photos had been requested, whether he had produced them to counsel, and whether he knew if his counsel had produced them. And can you explain why those questions are relevant to the proceedings? Because as the district court agreed, it goes to the credibility of plaintiff's claim that he could not enjoy his life. No, no, I understand why that is. But he would hide those because these pictures, well based on the earlier pictures, and plaintiff's counsel was holding some pictures of plaintiff on vacation from some earlier Facebook post, they showed him enjoying his life. If he continued to enjoy his life in travels, why was he not producing those to us if he knew that they had been requested? And they were asking, did you know that these had been requested? Was he attempting to hide them? It goes to a motive to try to hide maybe the degree of the damages that he was claiming. But in the sidebar, plaintiff's counsel just said this was a discovery issue that should have been resolved before trial. He didn't specifically object that this was prejudicial, and that was one reason the district court denied the motion for a new trial, in fact, finding basically that he waived this claim. On the backgrounds alone, it's not an abuse of discretion. And also the jury was not instructed that it could draw an adverse inference due to the plaintiff's failure to produce the photographs, which we had requested. The court denied that. But this didn't prevent our defense counsel from arguing in closing, just commenting on his failure to produce these photos based on relevancy. And this argument was followed by an instruction from the district court that defense counsel's argument is just that argument. It didn't deprive plaintiff of a fair trial. Then there's this other issue about sanctions and Truelight's failure to produce certain ECM or GPS-type data that they had requested. This was brought in the form of a motion in limine. It was called the motion in limine, number 64, but it was essentially a sanctions motion. They were attempting to bar Truelight's driver from testifying as to the speed of his vehicle. The court denied this motion without prejudice in a final pretrial conference because it wasn't seeking an evidentiary ruling. And there's no indication in the record that he ever renewed this motion. And ultimately, Truelight's driver never testified as to the speed of his vehicle. So plaintiff got the result he was looking for. He didn't testify. But later at trial, he sought an adverse inference instruction based on our alleged failure to produce this data. But he never made any showing that Truelight intentionally destroyed or hid evidence, which is required for this instruction, or that the evidence of the speed's truck would have supported his claims. And given the post-accident photos that showed minimal damage to his vehicle, it's likely that it would not have. And these photographs are actually included in his opening brief. That's some of these. So under these circumstances, the denial of his motion for sanctions without prejudice did not deprive him of a fair trial. Another issue brought up was comments made by defense counsel in closing argument regarding Dr. Fleeman. Could you actually address the relevance of the 1997 incident and how that came about? Because my understanding is that in the motion to eliminate, the district court initially excluded any evidence with regard to that incident, and then it kind of bubbled up during the trial. And I was wondering if you could put that in a bit more context for me. Yes, because that's a little bit confusing because there were actually three motions in limine filed by defendants on the issue of prior injuries and accidents, 23 and 24 related to injuries and accidents, asking for no evidence to be introduced unless there was, without expert testimony that connected the two, the prior accident and the later accident. This was 23 and 24. There was a third motion, number 51, that just specifically addressed the 1997 accident in particular. So first the district court granted the first two motions, 23 and 24, and in that ruling the court said, unless plaintiff opened the door on any of these issues, and then it denied the motion in limine number 51. When the district court denied his motion for a new trial, it found that the plaintiff waived any issues relating to this 1997 accident because he opened the door by bringing it up in the opening statement. And this was before defense counsel said anything. But given the ruling on the motions in limine where the district court specifically told them, well, they're barred unless you open the door, it was his choice to introduce the 1997 accident first as a matter of strategy, and he claims he was forced to under the Wilson case. But, you know, that's different here. His motions were granted. So he opened the door after he had already won the issue in that this evidence would be barred without proper expert support. So for this reason alone, the district court's finding that he waived the issue should stand. But with the evidence that was introduced, there was expert testimony supporting the admission of evidence that he had been involved in this 1997 accident. Nobody ever claimed that, you know, the injuries he sustained today or was exhibiting today had any causal relationship with the 1997 accident. We had an expert, Dr. Bauer, who specifically testified regarding plaintiff's complaints of pain from the 1997 accident or numbness and tingling that, maybe to his hands and his feet, this was based on a review of the plaintiff's medical records. So he saw that there was numbness and tingling from 1997, and everybody agreed that this accident didn't cause any spinal, a trauma to his spinal cord, which ultimately they claim resulted in this myelomalacia, that's some softening of the spine. So he had those symptoms then. They were resolved. And then he had the same symptoms immediately following the 2017 accident. So our experts concluded that this numbness and tingling that he experienced now is no more indicative of a traumatic spinal cord injury than it was in 1997. So there was expert testimony to support that. But in some ways, you can look at that as kind of a backdoor way of trying to argue that the 1997 incident is what caused his current numbness and tingling. No? No, that was 20 years before, and there was testimony on both sides. There was no claim of numbness and tingling in the interim 20 years. Our whole point was that wasn't related at all. You can be in a low-impact vehicle accident, have numbness and tingling. It can go away. And then 20 years later, it can happen again. And it doesn't mean that because you are experiencing numbness and tingling, now you have a spinal cord injury or this myelomalacia. So this was relevant, and there was no abusive discretion in the court allowing Dr. Bauer to testify to this fact or for defense counsel to comment on Dr. Bauer's testimony in the closing argument. The other issue of Dr. Fleeman that he brought up, at her deposition she had testified that plaintiff didn't need an MRI when she saw him, examined him after the accident. But then at trial, she testified that an MRI should have been done earlier than nine months after the accident. So plaintiff's counsel argued in closing that the MRI should have been done earlier, and he stated about this Dr. Fleeman. He said she fessed up and took responsibility. So in response, defense counsel just suggested that if her negligence had contributed in any way to plaintiff's injuries, why didn't plaintiff sue the doctor for not performing an MRI earlier? But plaintiff claims that we're making him look litigious, but actually we're suggesting maybe he's not because he didn't sue Dr. Fleeman, but more importantly it suggests that plaintiff had no symptoms at the time he first went to see Dr. Fleeman that would indicate that he needed an MRI at that time. So this defense counsel's argument, again, was fair comment on the evidence. The jury was, again, instructed that her comments were not evidence, and they did not result in an unfair trial for plaintiff. Plaintiff's counsel also brought up the issue of some testimony that the plaintiff had been doing construction work and that he was carrying plywood up a ladder. Also that he did some remodeling jobs. The defense counsel made some comments in closing argument as to whether this could have caused or contributed to his complaints. But this was supported by the evidence, and that included some expert testimony, and we cite this evidence in our brief. I don't believe that there's any dispute that he was out there, and he used those terms that he was out there after his stepson testified that he had called him over to help him with a project carrying up this plywood. And the timing of this work coincided with the first report of urinary incontinence that plaintiff had, which was consistent with Dr. Bauer, our expert's report, that this could be a symptom of a spinal cord injury. And others testified that he worked on remodeling projects around the same time after the accident, which coincided with complaints that caused Dr. Fleeman to eventually order this MRI in the spring of 2018. She also testified that this lifting activity could worsen his symptoms. So the court was correct in finding that this evidence was the type of evidence that a layperson can understand that if your back hurts, let's say, for example, that you're carrying things up and down, that's an exception to Boykin. You don't need expert testimony, but we did, in fact, have expert testimony to support that. And it, again, was fair comment on the evidence. If this court finds that the district court made any errors at all, these errors must be so severe as to render the trial fundamentally unfair. These were all discretionary rulings on which another court might rule differently, but this isn't a basis for awarding plaintiff a new trial and essentially a do-over. This was a seven-day trial. Just on the issue of damages, the jury had ample opportunity to hear the evidence presented by both parties and to assess the witness's credibility, including plaintiff's. The evidence is more than sufficient to support the verdict, and they don't even really argue that the verdict was against the manifest weight of the evidence. Although he's disappointed in the outcome, he had a fair trial. The district court saw and heard what happened, and it's in the best position to rule on plaintiff's motion for a new trial. For these reasons, we ask that you affirm the court's denial of a motion for a new trial. Thank you. Thank you, Ms. Green.  Mr. Power. Counsel just told this court that the trial court granted our motion to eliminate number 51, barring any prior injuries, not specifically the 1997 accident. That's incorrect. The record would reflect that plaintiff's motion to eliminate number 51 was denied. The judge allowed them to get into the 20-year-old prior occurrence, which counsel just admitted, and they admitted in a brief. But wasn't the evidence exactly how Ms. Green described it, that it had to do with the numbness and tingling that occurred after the 1997 accident, which he complained of, and then he occurred. He complained of numbness and tingling 20 years later as a result of another accident, and there's nothing unusual about that. But it doesn't necessarily mean that he had this softening of the tissue in 1997 until today.  They admit he didn't have it. They admit, so there's no causal relation. That he did not have it. He did not have it. Right. So the prior occurrence doesn't get in. It's reversible error. There is no case in this record where you let in a prior accident, and it's not causally related. There's no case that's cited by either side. Counsel, didn't you bring this up in your opening statement? I don't know. Didn't plaintiff bring this up in an opening statement? I did, because under the Seventh Circuit, Wilson v. Williams case, I can't, once the court denies it, and there were evidence depositions of Dr. Neubauer and the nurse practitioner, the first person who treated him, nurse practitioner Burnham, or Burkhard, I think her name was. She testified. The judge ruled in evidence steps before trial that it's coming in, and he denied our motion to eliminate number 51. So once there's definitive rulings, which those are definitive rulings. How so? He ruled what's coming in evidence. Motions eliminated are never definitive, are they? No, but the evidence steps are. The evidence steps, he ruled that it's coming in, about two evidence steps. So as a result, I can't just forget about it. I have to deal with it. It's clearly not waiver, and that's what the Seventh Circuit decided in the Wilson case, and it's, I mean, I've tried a lot of cases, and once there's a- Yeah, you wanted to head it off. I get it. Pardon me? You wanted to head it off. I get it. I did, and that's allowed. So it's not waiver. The court was incorrect. And when that comes in that way, which counsel just admitted, there's no causal relationship, it's reversible error. Now, they're taking one isolated note by a physical therapist, which Dr. Neubauer said is not related. This was lower back. He had physical therapy to the lower back. He called it pseudo-ridiculopathy, which means there's no ridiculopathy. There's no nerve involvement. There's no spinal cord involvement, and it's to the lower back. It has nothing to do with this occurrence. Every case that's cited in this case, if you let in a prior accident without a causal relationship, it's reversible error. And we're talking about what the court did, as I talked about before in the Myers case. Summary judge, when you're talking about it, she argued it's cumulative trauma. They have to have a specific expert, treating doctors, an ergonomic expert was not allowed to avoid summary judgment in the Myers case before this court. The summary judgment was granted. Now, she argued all this cumulative trauma, the myelomalopathy, and here in the cross-examination of Dr. Neubauer, she asked them, right, so whether he was suffering from myelomalacia back in 1998 or 1997 following the car accident, you don't know one way or the other because you didn't order that MRI. The answer, yes, I guess that's true. So now they switch and they say, oh, we're not claiming it's myelomalacia. Which they said before the court, but when she cross-examined, and I objected to that, and the judge overruled it. So they were trying to tie it up. They weren't able to tie it up. Dr. Neubauer wouldn't even give them that. And as a result, the judge committed reversible error, and that's what all the cases say. And we can go through them again if the court wishes, but that's what every case we cite, starting with Voigtkind. If you don't tie it up, the Obstensky case, the same thing. Now, they let in, they had tie-up for a prior occurrence, so that was allowed, but a subsequent occurrence was reversible error. Every case by both sides cited here, it's reversible error to let in a prior accident. And I even tried to question him. I got out of question that he didn't file lawsuit, but I wanted to ask why, because he wasn't injured. Counsel objected and was sustained, and I wanted to do that to show, like, he didn't settle the case, he didn't pursue it, because it was a minor lower back injury. There was no causal relationship between the prior accident and what happened here. They were trying, as the court mentioned, to backdoor this prior accident to get it in evidence. And they did it, and it was insufficient. What they did here is reversible error. And the accusation of Dr. Fleeman, medical malpractice, must have caused this. Also, the prior occurrence, prior work he did, before he was diagnosed with myeloma, it may have... All right, thank you, Mr. Power. We got it. We're going to tie you out of time. Thank you. Okay, we'll take the case under advisement.